## J. L. TIPPETT v. THE STATE.

No. 2116. Decided June 25, 1901.

Motion for Rehearing Decided June, 25, 1901.

**1. Continuance.**

An application for continuance for an absent witness is properly overruled where the witness had been subpoenaed some eight months before the trial, and it was not shown that he had obeyed the subpoena or attended court in the interim.

**2. Same.**

A continuance will not be granted for an absent witness whose testimony is sought solely for the purpose of impeaching a State's witness.

**3. Forgery—Charge.**

On a trial for forgery of a note admitted to be executed by defendant, where he claimed as a defense that he executed the note with the understanding between himself and another party, that it was only to be used temporarily in a game of cards, and at the expiration of the game to be restored to him (defendant), and that there was no intent to defraud anyone, Held, if the defense could be considered a legal one, a charge of court was sufficient which instructed the jury that before they could convict they must believe that the instrument in question was made with intent to injure or defraud, and that if defendant did not sign the name of the purported maker with intent to injure or defraud, to find him not guilty.

APPEAL from the District Court of Delta. Tried below before Hon. H. C. CONNOR.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary .

We copy the following statement of the case, which is substantially correct, from the brief of appellant on file with the record, to wit: In and around Cooper, Delta County, Texas, several years prior to the time of the return of this indictment, the appellant and one R. M. Duncan, the prosecuting witness (as will hereafter appear), had lived, principally, and been engaged in the business of gambling and sports generally. On June 7, 1899, the day that this crime is charged to have been committed, the appellant and said Duncan agreed to meet and have a game of poker with other parties, which game was had on the day last above mentioned. The proof in this case at least tends to show, if it does not conclusively show, that appellant and Duncan, just prior to the game, entered into an agreement between themselves, whereby appellant might induce other parties who played at the game of poker to believe that he had money and was able to stake himself at a game. It had previously been known and generally understood by these parties who participated in gaming that appellant was "busted" and could not stake himself in a game, and in order to induce the parties who participated in the game to believe that appellant had money to play in the game, appellant and Duncan agreed that appellant should hand or pass to Duncan in the game a piece of paper as though it was something of value and demand $5 worth of checks, which he was to receive from Duncan, and that in order to induce the

said parties, consisting of four or five in number, to come to the place where said game was to be played that night, it was agreed that appellant should go round where these parties did business and wherever he might find them during the afternoon of that day and exhibit to them or tell them that he had a check and wished to borrow money upon it, and it was agreed by appellant and said Duncan that appellant was to sit next to Duncan and on his left during the game, and whatever they might win from said game would be divided between them.

Appellant, in pursuance to said agreement, signed the name of W. R. Sherfield to a note which he previously had prepared by the bank and which evidence will show had been honestly made for the signature of W. R. Sherfield, who owed to R. M. Walker, cashier of the First National Bank of Cooper, the amount specified in said note. This note, when so signed, was delivered to Duncan in the game with the express understanding and for the only purpose that the parties in the game would believe that appellant had money or property to play into the game, and it was expressly agreed and understood by appellant and Duncan that said note was to be used for no other purpose and to be destroyed at the end of said game.

The following special instructions were requested by appellant to be given in charge by the court and refused, to wit:

"You are charged that there is no law against attempted forgery, and if you believe that the defendant, John Tippett, attempted to forge the name of R. W. Sherfield, and signed the name of W. R. Sherfield, that said instrument would not create any pecuniary obligation on R. W. Sherfield, and in that event you are instructed to find the defendant not guilty.

"You are instructed that the gist of the crime of forgery is an intent on the part of the accused to injure or defraud some one, and the injury or fraud contemplated by the law is such only as would fall to a party or parties connected therewith at its inception or thereafter with said instrument by transfer or indorsement.

"If, therefore, you believe from the testimony that the defendant executed the instrument described in the indictment, and although you might believe without lawful authority in the furtherance of a plan or in accordance with an agreement between the defendant and Bob Duncan to use said instrument as a mere sham only to enable the defendant to stake himself in a game of cards, and that by the use of said instrument the defendant either alone or in connection with Bob Duncan might have beaten or intended to beat the game and thereby win the money off of his associates, you will nevertheless find the defendant not guilty if you believe from the evidence that it was the intention of the defendant that this was the only use to which said instrument was to be put, and that the witness Bob Duncan, after advancing the money on it by virtue of said agreement, was to deliver up said note to the defendant or destroy the same when it had served said purpose."

*Burnett & Jones,* for appellant.—The execution of a false instrument purporting on its face to create a pecuniary obligation, for the purpose of making parties in no wise connected therewith or affected thereby believe that the maker thereof is possessed of property to the extent of the value of said instrument, if genuine, and with no other intention on the part of the maker except to induce such belief, is not forgery, the deception or fraud intended in such a case not being such as is contemplated by the statutes defining forgery. The court erred in failing to charge all the law applicable to the facts of the case, that is in refusing to charge on defendant's theory of the case to the effect that the note was executed by him for no other purpose than to induce parties engaged in the game of poker to believe that he was able to stake himself, and did not have to depend on the prosecuting witness, R. M. Duncan, for money to play into the game, and with no intention on the part of defendant that the note should ever be used for any other purpose, and that defendant did not intend to create or effect any pecuniary liability by executing said note, but simply intended to deceive the parties engaged in the game into the belief that he, defendant, was not broke. It is fundamental error for the court to fail to charge the law applicable to defendant's theory of the case, if there is any evidence tending to support it. They cited in support of their proposition, 52 American State Reports, 188, 189.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

There was no error in the action of the court overruling the continuance in this case. The diligence used was not sufficient. This case was tried at the January term, 1901, of the District Court of Delta County. Subpoena appears to have been served on the absent witness, in Rockwall County, on the 18th day of May, 1900. It is not shown that this witness obeyed said subpoena in the interim, or whether he attended court in Delta County between the time of service and the time of trial. It should have been shown that he obeyed said subpoena, otherwise an attachment should have been issued for him. Moreover, the testimony of the witness Orr was for the purpose of impeaching the State's witness, and a continuance will, ordinarily, not be granted on this account.

Appellant objected to the introduction of the alleged forged instrument on account of a variance between it and that set out in the indictment. We do not believe the objection was well taken. Nor was appellant's motion to quash the indictment well taken. On the trial appellant asked a special instruction setting up his defense of a want of intent to injure or defraud Sherfield, or anyone else by the execution of the instrument. The proof on this behalf, on the part of

appellant, showed that the alleged forged instrument was executed by him for the purpose of getting into a game of càrds; that is, that two of the parties in the game did not desire to play with him because they believed he was in with Duncan, and that he had no money of his own. Appellant testified that by a secret understanding between him and Duncan he was to make a note and sign Sherfield's name to it, and, when the game opened, he was to present this note to Duncan, and Duncan was to loan him money on the note, or sell him chips with which to play in the game; and that it was the understanding between him and Duncan that said note was only to serve this purpose, and, at the expiration of the game, Duncan was to restore to him said note; that the whole purpose of its execution was to deceive the two other players in the game, and lead them to believe he had money or property. The charge requested embodied in detail this phase of the case, and instructed the jury, if they believed said note was so executed, that there was no intent to injure or defraud, and to find appellant not guilty. We would remark, in passing, that this was an extraordinary defense, but concede it presents a legal defense to the State's accusation, in that, if it was true, there was no intent to injure or defraud anyone, which is required by our statute in order to constitute forgery, still it occurs to us that the court sufficiently presented this matter to the jury; for, after charging them that before they could convict appellant they must believe that the instrument in question was made with intent to injure or defraud, he then instructed the jury substantially as follows: "If defendant did not sign the name W. R. Sherfield with the intent to injure or defraud, to find him not guilty." Now, the only evidence presenting the issue of a lack of intent was that of appellant, suggested above, so that the charge in question authorized the jury to determine this issue. True, the charge was not a charge presenting the facts constituting appellant's defense on this line, but it was a distinct charge on the issue of fraudulent intent, and could only have had reference to said evidence on this subject, and the jury could only have so applied it. There being no error in the record, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—The judgment was affirmed at a previous day of this term, and now comes before us on motion for rehearing. Appellant in his motion for rehearing calls our attention to a mistake in the original opinion in reciting the facts bearing on the question of diligence. We said in the original opinion "that it was not shown that the absent witness obeyed the subpoena in the interim between the 18th of May, 1900, and the time of the trial, to wit, the January term, 1901." A more careful inspection of the record discloses the fact that appellant does recite "that said witness, in obe-

dience to said process, has been in attendance upon this court at each and every term thereof until to-day." However, it does not occur to us that this affects the disposition of the case, or appellant's motion for continuance and new trial based thereon. The bill does not show that the witness Duncan was examined on the point upon which it was proposed to impeach him by the absent witness. He may have admitted the conversation and have explained it. But if we consider the matter as was done in the original opinion, that a proper predicate was laid for the impeaching testimony, yet, as said in the original opinion, a continuance will not ordinarily be granted for the purpose of procuring testimony of an impeaching character, and we see nothing in this case to take it out of the general rule.

As to the other proposition, which appellant strenuously and ably insists should reverse the case, as stated in the original opinion, we think the court sufficiently charged his defense, and we have nothing to add to what was then said. The motion for rehearing is overruled.

*Motion overruled.*